## WILLIAMSON v. CHICAGO MILL & LUMBER CORPORATION.

No. 9367.

Court of Appeals, Eighth Circuit.

June 18, 1932.

Lamar Williamson, of Monticello, Ark. (J. G. Williamson and Adrian Williamson, both of Monticello, Ark., on the brief), for appellant.

C. E. Daggett, of Marianna, Ark., and C. M. Buck, of Blytheville, Ark., for appellee.

Before STONE and KENYON, Circuit Judges, and OTIS, District Judge.

STONE, Circuit Judge.

This is an action by appellant against appellee and others to quiet the title to certain land located in the state of Arkansas, and for an injunction from trespass upon the above lands and cutting of timber therefrom, or in any other way interfering with the rights and title of appellant. The above complaint was filed October 8, 1929. Thereafter, appellee removed the case to the federal court and on February 28, 1930, filed its amended answer thereto. This answer challenged the title of complainant upon several specific grounds. Upon the same day, complainant filed its "reply and supplemental complaint." The portion of this pleading denominated "supplemental complaint" set forth that since the filing of the action the appellee and another defendant had gone upon the land and cut and removed therefrom a large amount of loggage after written no-

tice from the plaintiff forbidding such trespass and after notice that the present suit had been filed. The prayer of the supplemental complaint was for $8,000 actual damages already suffered, and for a trebling of these damages under a state statute providing therefor. To this supplemental complaint an answer was filed denying the allegations thereof and pleading further grounds of attack upon the title of complainant. After a full hearing upon the merits, the court entered a decree adjudging title in complainant but dismissing his supplemental complaint for damages "for want of equity." This appeal is by complainant and is expressly limited to the dismissal of the supplemental complaint.

Before entering upon the merits of the controversy it is necessary to dispose of a contention raised by appellee that this appeal should be dismissed because taken out of time. This contention is that the case was disposed of finally on the 15th of July, 1931, while the appeal was not taken until November 3, 1931. The situation is as follows: Upon July 15, 1931, the court filed an opinion stating the grounds of its determination and concluding as follows: "Findings of fact and conclusions of law in accordance with this opinion may be prepared and submitted for approval, and a proper decree prepared." Thereafter, findings of fact and conclusions of law were made by the court and are dated September 30, 1931, although they do not seem to have been filed until October 14, 1931. Upon September 30, 1931, a decree was entered. From the above statement of the situation it is clear that the opinion of the court can in no wise be treated as a decree, but that the first order from which an appeal could have been taken is the decree entered September 30, 1931. Of course, the appeal taken November 3, 1931, was in ample time so that this contention of appellee is unsound.

Another contention raised by appellee is that we cannot examine the questions sought to be presented by appellant because they depend upon the statement of evidence and that the statement of evidence here presented is obviously deficient in not containing all of the evidence. The court in its opinion and its findings of fact stated, concerning the supplemental bill, that "the circumstances under which the timber was cut and removed * * * by defendant does not entitle plaintiff to recover their value." In neither the opinion, nor the findings of fact or conclusions of law, does the court further

intimate what the "circumstances" are which led him to this conclusion. This contention of appellee is that the present statement of evidence entirely omits "the great volume of testimony introduced showing the 'circumstances' under which the timber was cut and removed, and from which testimony the trial court found that appellant was not entitled to recovery for the timber so cut and removed." The proposed statement of evidence was approved by counsel for appellee as follows: "On the appeal of plaintiff, Lamar Williamson, his foregoing Narrative Statement of Evidence on the issues presented by his appeal, is hereby approved." It was, of course, obvious that appellant was tendering this statement as containing all of the evidence which he considered pertinent to the matter to be presented to this court in relation to the issues he desired reviewed. The last paragraph of the statement of evidence is: "The defendant, Chicago Mill & Lumber Corporation, offered no testimony to contradict the foregoing evidence."

■ Equity Rule 75 (a), 28 USCA § 723, permits the appellee, who desires additional portions of the record incorporated into the transcript, to file his præcipe making indications thereof. Paragraph (b) of the same rule requires the trial court to consider the transcript and all objections or amendments proposed by any party and if the statement be "true, complete, and properly prepared," to approve it, but "if it be not true, complete or properly prepared, it shall be made so under the direction of the court or judge and shall then be approved." When the statement is so approved it imports that all of the evidence essential to the decision of the questions presented by the appeal has been included. Ralston Purina Co. v. Western Grain Co., 23 F.(2d) 253, 255 (C. C. A. 5). If anything has "by accident or error," which is material, been omitted, the proper method is for the appellate court "on a proper suggestion or on its own motion" to direct that the omission be corrected by a supplemental transcript. From these rules, it would seem evident that it does not lie in the mouth of an appellee in a suit in equity in the federal court to seek to bring about the defeat of the appellant by contending that a statement of case is so incomplete as to prevent the appellate court considering the issues raised on the appeal, but that the statement of case must be taken to include all of the evidence bearing upon such issues, and that if it should appear in the appellate court that

material evidence has been inadvertently omitted, that court may have such evidence transmitted to it in order that the appeal may be determined by it upon the merits. Whether we should order such supplemental transcript is an open question. In the argument in appellee's brief it is claimed that the omitted testimony had to do with "showing the circumstances under which the timber was cut; the long period of years over which the Appellee and its grantors had claimed to own the lands in suit under color of title, had exercised ownership thereover, and had paid taxes thereon, under an order of the County Court of Chicot County, Arkansas, directing the lands to be surveyed and placed upon the tax books." It is clear that this suggested omitted evidence, while it might bear upon the measure of damages, could by no possibility justify the action of the court in determining that no damages should be assessed and the supplemental bill dismissed. It does have some bearing upon the measure of damages since that measure is one thing where there is an innocent trespass, and another where there is a willful trespass. However, the evidence in this case conclusively shows that this timber was cut and removed with full knowledge and after repeated notice and warning of appellant's claim of title and of the pendency of this suit. It may be that appellee was convinced that it had a full and complete title, but even so, when it proceeded to cut and remove this timber with full knowledge of appellant's claim and warning and the pendency of this action, it must be regarded as having taken the risk of being a willful trespasser if it be mistaken in its own rights. Therefore, if all of the suggested omitted evidence were before us, it could not change our determination.

### Jurisdiction.

■ The trial court gives us no clear expression of his reason for dismissing the supplemental bill. Appellee argues that the court, sitting in equity, had no jurisdiction to pass upon this matter of damages covered by the supplemental complaint because that is a matter purely of law and outside of equitable jurisdiction. The original complaint was purely and exclusively an equitable matter to quiet title and to enjoin trespass. The supplemental complaint for damages through trespass, pending the litigation, in no wise changed the character of the relief which had been and was continued to be sought in the original complaint. Therefore, the court, sitting in equity had full power to determine

the issues of the original complaint and could not do so except as a court of equity. If the supplemental petition had stood alone, it would, of course, be an action at law in trespass or trover; but being joined with the original complaint, the question is whether a court of equity had jurisdiction to determine the issue presented by the supplemental bill in connection with its disposition of the original complaint. It is well established that where the main controversy is equitable, a court of equity may therein dispose of the entire controversy and do complete justice, although such action may involve matters which, standing alone, would not be of equitable cognizance. General Equity Rule 23 (28 USCA § 723). This has been repeatedly determined by the Supreme Court, three recent decisions being Liberty Oil Co. v. Condon Nat. Bank, 260 U. S. 235, 244, 43 S. Ct. 118, 67 L. Ed. 232; Kinney-Coastal Oil Co. v. Kieffer, 277 U. S. 488, 507, 48 S. Ct. 580, 72 L. Ed. 961; and Rice & Adams Corp. v. Lathrop, 278 U. S. 509, 49 S. Ct. 220, 73 L. Ed. 480; and see also Maytag Co. v. Meadows Mfg. Co., 45 F.(2d) 299 (C. C. A. 7), for clear discussion of this principle.

There is another reason for sustaining the jurisdiction of the court. Even where the main controversy in an action is one at law but is brought upon the equity side of the court, the proper procedure is not to dismiss the action, but to order a transfer of it to the law side of the court and its trial there (General Equity Rule 22 [28 USCA § 723]), and a defendant who acquiesces in the trial of a law issue on the equity side of the court will not be heard, on appeal, to contend even that the cause or the issue should have been transferred to the law side. Elkhart Carriage & Motor Car Co. v. Partin, 9 F.(2d) 393 (C. C. A. 6); Fay v. Hill, 249 F. 415, 418, this court, and see Waldo v. Wilson, 231 F. 654 (C. C. A. 4), certiorari denied 241 U. S. 673, 36 S. Ct. 724, 60 L. Ed. 1231. It is very clear in this record that the issues tendered by the supplemental bill were met by pleading and evidence and tried and determined by the court without any suggestion of lack of jurisdiction in the court, sitting in equity, to determine those issues. Even the very brief expression of the court regarding the disposition of the supplemental bill makes it clear that his determination was upon the merits and not for any want of jurisdiction. It is, therefore, clear that appellee completely waived any right to object here to the exercise of this jurisdiction.

## Merits.

The merits of the issues presented here have to do with the allowance of damages for the cutting and taking away of the timber. The evidence clearly shows that the appellee took from the land of appellant something over 520,000 feet of timber. Obviously, a right of recovery for this damage existed. The real issue is not as to the awarding of damages, but as to the amount of damages, and in this regard the legal question has to do only with the measure of damages since the evidence is clear as to amounts. There is no dispute in the evidence that this timber was cut down, transported to the edge of this land, which bordered the river, and from there taken away by appellee. The evidence is also undisputed and the court found that the value of this timber at the time and place where it was cut was $6,240, and the value where it was stacked on the border of appellant's land was $10,400. Out of this situation two questions as to the measure of damages arise. The first is whether the actual damage to be accorded is measured by the value of the stumpage, or by the value stacked upon the edge of appellant's land. The second question is whether the actual damages should be trebled under the Arkansas statute and recovery awarded for the trebled damage.

Two cases in the Supreme Court (Pine River Logging & Imp. Co. v. U. S., 186 U. S. 279, 293, 22 S. Ct. 920, 46 L. Ed. 1164; Bolles Wooden-Ware Co. v. U. S., 106 U. S. 432, 1 S. Ct. 398, 27 L. Ed. 230) establish that if this trespass was innocent, the measure of damages is the stumpage, while if the trespass was willful, the measure is the value stacked at the edge of appellant's land. The evidence abundantly establishes that this trespass was willful. With full knowledge of appellant's claim of right and title to this land and of the pendency of this action to establish his title and prevent this very character of trespass, and with full warning from him not to commit such trespass because of his ownership, this appellee, in less than three weeks after the filing of this bill and even before it had made answer thereto, entered upon this land in utter defiance of any rights which appellant might have had and took this timber. The fact that it may have thought or may have had some cause to think that it had title to the land and a right to cut this timber cannot justify such action under circumstances such as these. If it elected to take such action it must also take the risk of its being wrong. Any

other view would put a premium upon unlawful acts and leave the determination of the matter upon the unstable ground of the honest belief of the wrongdoer, where he has been fully apprised of the alleged rights of the owner. In this particular case, the situation is aggravated by the fact that the owner was endeavoring, promptly, in every legal and proper way, to protect his rights and to apprise the wrongdoer thereof. Therefore, the measure of actual damages which should be applied here would be as for a willful trespass or the value of the logs stacked at the edge of appellant's land. The undisputed evidence is that such value was $10,400. However, the "supplemental complaint" stated the damage sought to be recovered for this cutting to be $8,000 and the record shows no attempt to amend this amount to conform to the proof. The amount stated in the pleading measures the maximum possible recovery. Brought v. Cherokee Nation, 129 F. 192, 195, 196 (C. C. A. 8); Hoffschlaeger Co. v. Fraga, 290 F. 146, 149 (C. C. A. 9). Therefore, the recovery of actual damages here must be limited to $8,000.

The imposition of treble damages by the Arkansas statute (Crawford & Moses' Dig., § 10320) does not seem to be proper by a court of equity under certain decisions of the federal courts. The rule seems to be that a forfeiture or a penalty will not be enforced in equity by a United States court unless there is a direct statutory authorization to that effect. The reasoning at the basis of this rule seems to be that in the historical development of equitable jurisprudence the principle of decision is that of ex aequo et bono, which permits only what is just and right with no element of vengeance or punishment, in short, mere compensation. Livingston v. Woodworth, 15 How. 546, 549, 14 L. Ed. 809; Stevens v. Gladding, 17 How. 447, 453, 15 L. Ed. 155; Fleitmann v. Welsbach Street Lighting Co., 240 U. S. 27, 36 S. Ct. 233, 60 L. Ed. 505; Decorative Stone Co. v. Building Trades Council of Westchester County, 23 F.(2d) 426 (C. C. A. 2). Therefore, we conclude that treble damages are not allowable in this equitable proceeding.

The case is remanded, with directions to set aside that portion of the decree dismissing the supplemental complaint and to enter recovery on such complaint for the sum of $8,000 as damages.