**DOUGLAS v. WISCONSIN ALUMNI RE-SEARCH FOUNDATION et al.**

No. 46 C 1535.

United States District Court
N. D. Illinois, E. D.

Oct. 25, 1948.

168

Johnson & Wiles, of Chicago, Ill., for plaintiff.

Haight, Goldstein & Hobbs, Lee J. Gary and Kirkland, Fleming, Green, Martin & Ellis, all of Chicago, Ill., for defendants.

CAMPBELL, District Judge.

Plaintiff brought this action under the Anti-Trust laws of the United States (15 U.S.C.A. §§ 1 to 27 inclusive), seeking to recover treble damages for the alleged conspiracy existing between the three defendants to monopolize trade in the field of vitamins and vitamin products. The defendants filed separate answers to the complaint, denying such a conspiracy. Subsequently, defendant Wisconsin Research moved to amend its answer so as to allege that an action had been previously brought by it against this plaintiff for patent infringement; that the answer filed in that suit by plaintiff was substantially the same as the present complaint; that plaintiff, therefore, had a compulsory counterclaim in the former action under Rule 13 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and is estopped from maintaining the present suit against Wisconsin Research. Simultaneously, Wisconsin filed a motion for summary judgment based on the same theory as its motion to amend. It appears from the briefs of the parties that the former action was dismissed as to Douglas, with prejudice, by stipulation before a trial of the cause was had upon its merits.

An analysis of the applicable law reveals that certain modifications to the fundamental concept of compulsory counterclaims have been introduced by means of judicial decision. The case of Moore v. New York Cotton Exchange, 1925, 270 U. S. 593, 46 S.Ct. 367, 371, 70 L.Ed. 750, 45 A.L.R. 1370, sets forth the basic rules for determining whether or not a compulsory counterclaim exists:

"Two classes of counterclaims thus are provided for: (a) One 'arising out of the transaction which is the subject-matter of the suit,' which must be pleaded; and (b)

another 'which might be the subject of an independent suit in equity' and which may be brought forward at the option of the defendant. We are of opinion that this counterclaim comes within the first branch of the rule, and we need not consider the point that, under the second branch, federal jurisdiction independent of the original bill must appear * * *.

"The bill sets forth the contract with the Western Union and the refusal of the New York exchange to allow appellant to receive the continuous cotton quotations, and asks a mandatory injunction to compel appellees to furnish them. The answer admits the refusal and justified it. The counterclaim sets up that, nevertheless, the appellant is purloining or otherwise illegally obtaining them, and asks that this practice be enjoined. 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much on the immediateness of their connection as upon their logical relationship. The refusal to furnish the quotations is one of the links in the chain which constitutes the transaction upon which appellant here bases its cause of action. It is an important part of the transaction constituting the subject-matter of the counterclaim. It is the one circumstance without which neither party would have found it necessary to seek relief. Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations, as, for example, that appellant is unlawfully getting the quotations, does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim. * * *

"So close is the connection between the case sought to be stated in the bill and that set up in the counterclaim, that it only needs the failure of the former to establish a foundation for the latter; but the relief afforded by the dismissal of the bill is not complete without an injunction restraining appellant from continuing to obtain by stealthy appropriation what the court had held it could not have by judicial compulsion."

The case of Hancock Oil Co. v. Universal Oil Products Co., 9 Cir., 1940, 115 F.2d 45, 47, coincides directly with the present action, in that the plaintiff brought suit for patent infringement and the defendant counterclaimed under the Clayton Act, alleging an unlawful conspiracy to create a monopoly. "Since the counterclaim arises out of the 'transaction or occurrence that is the subject matter of the opposite party's claim', i. e. the ownership and introduction to the public of the plaintiff's patents, and since the counterclaim's allegations would warrant the relief against the plaintiff without the presence of the other parties to the conspiracy, the counterclaim is 'compulsory' in character and 'shall' be stated in the answer or the right to recover thereon is lost."

Normally, the Hancock case would be sufficient authority for dismissing the plaintiff's action as against Wisconsin here. However, a more recent decision of the Supreme Court would appear to establish a contrary rule. In Mercoid Corp v. Mid-Continent Inv. Co., 1943, 320 U.S. 661, 64 S.Ct. 268, 273, 88 L.Ed. 376, plaintiff sued defendant for contributory infringement of a patent, and defendant counterclaimed, alleging violation of the anti-trust laws by plaintiff. In a previous suit plaintiff had sued one Smith for patent infringement, and the present defendant, although not made a party to the action, had provided the defense.

" 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.' Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789. 'Where an important public interest would be prejudiced,' the reasons for denying injunctive relief 'may be compelling.' (Citing cases). That is the principal which has led this court in the past to withhold aid from a patentee in suits for either direct or indirect infringement where the patent was being misused. Morton Salt Co. v. G. S. Suppiger Co., supra, 314 U.S.

[488], page 492, [315 U.S. 788], 62 S.Ct. [402], page 405, 86 L.Ed. 363. That principle is controlling here. The parties cannot foreclose the courts from the exercise of that discretion by the failure to interpose the same defense in an earlier litigation. * * *

"What we have just said does not, of course, dispose of Mercoid's counterclaim for damages. That was based on § 4 of the Clayton Act [15 U.S.C.A. § 15] which provides * * * Though Mercoid were barred in the present case from asserting any defense which might· have been interposed in the earlier litigation, it would not follow that its counterclaim for damages would likewise be barred. That claim for damages is more than a defense; it is a separate statutory cause of action. The fact that it might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) [Permissive counterclaims] of the Rules of Civil Procedure, 28 U.S.C.A. does not mean that the failure to do so renders the prior judgment res judicata as respects it. (Citing cases). The case is then governed by the principle that where the second cause of action between the parties is upon a different. claim the prior judgment is res judicata not as to issues which might have been tendered but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' * * * It was held in Fleitmann·v. Welsbach Street Lighting Co., 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505, that the statutory liability in question may be enforced only through the verdict of a jury in a court of common law. But there is·no reason under the Rules of Civil Procedure why that may not be done under this counterclaim. Rules 12(h), 13, 38, 42(b). Whether the evidence will show damages within the rule of Story Parchment Co. v. Paterson [Parchment Paper] Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544, is of course a distinct question on which we intimate no opinion.

"We have mentioned the statutory claim for damages because both the District Court and the Circuit Court of Appeals denied that relief. But since the cause must be remanded to the District Court, we think the question whether res judicata bars any other part of the relief sought by the counterclaim may appropriately be reserved for it."

 A consideration of·the nature of a compulsory counterclaim would appear to indicate certain inherent weaknesses in the rationale of the Mercoid decision. A compulsory counterclaim, by definition, is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim". In an action for patent infringement, the subject matter is the patent, its use, and its infringement. And since it is recognized as a valid affirmative defense, misuse by the patentee must also be included as a necessary ingredient of the subject matter. It is logically related to, and intimately interwoven with, the other elements so as to render it indispensable to the whole. Nor does the mere fact that a separate right of action is,granted by statute for misuse by the patentee, alter its character. More than one right of action can be created by a single.transaction, but the method of enforcing these rights can be restricted or qualified. Rule 13(a) is an example of this type of restriction. A defendant has a right to defend on the ground of misuse, and he also has a right to maintain a counterclaim for damages for that same misuse; but he is restricted insofar as he must assert the one while asserting the other.

 Although this Court may not concur with the conclusion reached by the Supreme Court, it is, nevertheless, bound by the rule declared therein. The statement contained in the Mercoid case that "The fact that it might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) of the Rules of Civil Procedure, 28 U.S.C.A. does not mean that the failure to do so renders the prior judgment res judicata as respects it", appears almost too casually interjected; but its presence still results in the establishment of a rule of law. Apparently, it was the intention of the Supreme Court to remove this particular type ·of counterclaim from the dictates of Rule 13(a) in the interest of public policy.

 In the case at bar there are additional reasons for refusing to permit Wisconsin Research to assert the plea of a former compulsory counterclaim. In the prior

suit the complaint was dismissed as to Douglas before a trial of the cause was had upon its merits. At the time of the dismissal, it would have been still possible for Douglas to have asserted a counterclaim by way of amendment; but, in view of the dismissal order, such action became unnecessary. Furthermore, even if the complaint were now dismissed as to Wisconsin, a trial, nevertheless, must be conducted as to the other two defendants, at which Wisconsin would at least be a necessary, if not an indispensable, party.

The motions of the Wisconsin Research Foundation to amend its answer and for summary judgment are, therefore, denied.